ORDERED in the Southern District of Florida on _____06/18/09_____.



_____Raymond B. Ray_____
Raymond B. Ray, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

In re:                                                  Case No. 09-11976-BKC-RBR
                                                        Involuntary Chapter 7
FLAMINGO ENTERPRISES, INC.
d/b/a FLAMINGO FINANCING,

        Alleged Debtor.
_____/

### ORDER DENYING MOTION TO DISMISS INVOLUNTARY PETITION

THIS MATTER came before the Court upon the Motion to Dismiss Involuntary Petition [D.E. 3 and D.E. 7], filed by Alleged Debtor Flamingo Enterprises, Inc. ("Flamingo"), and the Responses thereto [D.E. 19, D.E. 22 and D.E. 25], filed by Eva Zilberman, Menahem Cohen, Zvi Kaholi, Israel Keren, Guri Yavnieli, Ben Zion Bezalel, Einat Ziv, Zeev Bokek, Yoel Saraf, Rina Saraf, Avi Cohen, Dori Cohen, Ophir Hochman and Gyory Blau (collectively, the "Petitioners"). Flamingo and the Petitioners also filed memoranda of law in support of their respective pleadings [D.E. 57, D.E. 58, D.E. 74 and D.E. 75]. For the reasons delineated below, the Court will deny the Motion to Dismiss.

### FINDINGS OF FACT

Flamingo is a Florida corporation and the wholly owned subsidiary of Aurora Capital, Inc. ("Aurora"). Flamingo finances the purchase of used automobiles through the acquisition of retail installment sales contracts.

Bank of America, N.A. ("BOA") is the holder of a secured promissory note issued by

Flamingo pursuant to the terms of a loan agreement dated March 7, 2002. The note was in the original principal amount of $20,000,000.00. As of August 1, 2007, BOA and Capital One, N.A. (collectively, the "Banks"), as lenders, and Flamingo, as borrower, entered into the "Amended and Restated Loan and Security Agreement" (the "Credit Agreement"). Pursuant to the Credit Agreement, the Banks agreed to provide for loans and advances of up to $65,000,000.00 to Flamingo (the "BOA Loan") with Aurora as a guarantor of the debt.

Section 9.14 of the Credit Agreement restricts the ability of Aurora and Flamingo to prepay holders of subordinated debt:

> Neither the Borrower [Flamingo] or Guarantor [Aurora] shall voluntarily prepay any Debt except the Obligations [to BOA] in accordance with the terms of this Agreement. The foregoing notwithstanding, provided no Default or Event of Default shall have occurred and be continuing and further provided no such payment shall cause a default of any financial or other covenant in this Agreement (I) [Flamingo] may pay when due all regularly scheduled payments of interest and principal due on all Subordinated Debt and (ii) [Flamingo] may prepay Subordinated Debt to any individual or entity not affiliated to [Flamingo] during any fiscal year in such amounts acceptable to [Flamingo] by further provided after such payment has been made [Flamingo] maintains Excess Availability in an amount of not less than 5%.

On August 1, 2003, Flamingo, as promissor executed and delivered to Eva Zilberman, as promissee, a promissory note (the "Zilberman Note"). The Zilberman Note states in relevant part, "Promissee acknowledges and understands that this instrument is subordinate to the Promissor's senior lender." The Court will refer to this language as the "Basic Subordination Language."

Flamingo, as promissor, executed and delivered to Menahem Cohen, as promissee, the following promissory notes: (a) one note dated December 1, 2006; (b) one note dated June 1, 2007; (c) one note dated February 1, 2008; and (d) one note dated May 1, 2008 (collectively, the "Menahem Cohen Notes"). Certain of the Menahem Cohen Notes state, "Promissee acknowledges, agrees and understands that...this loan is subordinate to the Promissor's senior

lender." The Court will refer to this language as the "Alternate Subordination Language."

Certain other of the Menahem Cohen Notes state, "The obligations of the Borrower and the rights of the Lender under this Note are subordinated to any Institutional Debt of the Borrower, on the terms set forth in the Additional Terms and Conditions attached to this Note." The Additional Terms and Conditions state the following in the section entitled "Subordination to Institutional Debt":

> For purposes of this Section, the term Institutional Debt means all indebtedness of the Borrower [Flamingo] to any financial institution... including, but not limited to, all indebtedness and other amounts payable to [BOA] and each of the other lenders under the Amended and Restated Loan and Security Agreement dated as of August 1st, 2007 between the Borrower and such lenders...
>
> Upon the occurrence...of any event of default with respect to the Institutional Debt, the Borrower shall not make and the Lender shall not accept any further payment of principal and interest or any other sum in connection with the indebtedness evidenced by this Note until the event of default is cured or waived in writing by [BOA] or until all Institutional Debt has been paid in full.

The Court will refer to those provisions collectively as the "Expanded Subordination Language."

Flamingo, as promissor, executed and delivered to Zvi Kaholi, as promissee, the following promissory notes: (a) three notes dated August 1, 2003; (b) one note dated January 1, 2005 (c) two notes dated April 1, 2005; (d) one note dated November 1, 2006; and (e) one note dated June 1, 2007 (collectively, the "Kaholi Notes"). Certain of the Kaholi Notes contain the Alternate Subordination Language. Certain other of the Kaholi Notes contain the Expanded Subordination Language.

Flamingo, as promissor, executed and delivered to Israel Keren, as promissee, the following promissory notes: (a) one note dated July 22, 2004; (b) one note dated February 18, 2005; (c) four notes dated March 1,2005; (d) one note dated August 5, 2005; (e) two notes dated January 1, 2006; (f) one note dated February 22, 2006; (g) one note dated September 1, 2006; (h) two notes dated December 1, 2006; (i) one note dated June 4, 2007; (j) one note

dated August 1, 2007; (k) one note dated September 1, 2007; and (l) one note dated October 1, 2007 (collectively, the "Keren Notes"). Certain of the Keren Notes contain the Basic Subordination Language. Certain other Keren Notes contain the Expanded Subordination Language.

Flamingo, as promissor, executed and delivered to Ben Zion Bezalel, as promissee, the following promissory notes: (a) one note dated February 9, 2004; (b) one note dated February 19, 2004; (c) one note dated May 1, 2004; (d) one note dated November 23, 2004; (e) one note dated July 29, 2005; (f) one note dated November 1, 2005; (g) one note dated December 1, 2006; (h) one note dated January 29, 2007; (i) one note dated June 11, 2007; and (j) one note dated September 24, 2007 (collectively, the "Bezalel Notes"). Certain of the Belazel Notes contain the Basic Subordination Language. Certain other Belazel Notes contain the Expanded Subordination Language.

On August 1, 2006, Flamingo, as promissor, executed and delivered to Guri Yavnieli, as promissee, a promissory note (the "Yavnieli Note"). The Yavnieli Note contains the Basic Subordination Language.

On August 1, 2004, Flamingo, as promissor, executed and delivered to Einat Ziv, as promissee, a promissory note (the "Ziv Note"). The Ziv Note contains the Basic Subordination Language.

On August 3, 2004, Flamingo, as promissor, executed and delivered to Zeev Bokek, as promissee, a promissory note (the "Bokek Note"). The Bokek Note contains the Alternate Subordination Language.

Flamingo, as promissor, executed and delivered to Yoel Saraf and Rina Saraf, as promissees, the following promissory notes: (a) one note dated December 1, 2006; and (b) one note dated February 1, 2008 (collectively, the "Saraf Notes"). One of the Saraf Notes contains

the Basic Subordination Language. The other Saraf Note contains the Expanded Subordination Language.

On January 1, 2006, Flamingo, as promissor, executed and delivered to Avi Cohen, as promissee, a promissory note (the "Avi Cohen Note"). The Avi Cohen Note contains the Alternate Subordination Language.

On January 1, 2006, Flamingo, as promissor, executed and delivered to Dori Cohen, as promissee, a promissory note (the "Dori Cohen Note"). The Dori Cohen Note contains the Alternate Subordination Language.

Flamingo, as promissor, executed and delivered to Ophir Hochman, as promissee, the following promissory notes: (a) one note on July 1, 2003; (b) one note on July 30, 2003; (c) one note on August 1, 2003; (d) one note on January 14, 2005; (e) one note on December 1, 2005; (g) two notes on December 1, 2006; and (h) one note on December 1, 2007 (collectively, the "Hochman Notes"). The Hochman Notes contain the Alternate Subordination Language.

Flamingo, as promissor, executed and delivered to Gyorgy Blau, as promissee, the following promissory notes: (a) one note dated July 1, 2007; and (b) one note dated December 1, 2007 (collectively, the "Blau Notes"). The Blau Notes contain the Expanded Subordination Language.

On May 23, 2008, BOA issued a "Notice to Stop Payment on Subordinated Debt" (the "Stop Payment Notice") to Flamingo. The Stop Payment Notice describes certain defaults under the BOA Loan and directs Flamingo to make no further payments of principal or interest in connection with any Subordinated Debt, as defined in the Credit Agreement.[1] Since the Stop Payment Notice, Aurora and Flamingo have not made any payments to their respective promissory noteholders (including the Petitioners).

---

[1] As of the date of the Motion to Dismiss, BOA was owed in excess of $20,000,000 on the BOA Loan.

On February 4, 2009, the Petitioners commenced this involuntary petition against Flamingo. On February 25, 2009, Flamingo filed its Motion to Dismiss (the "Motion to Dismiss") [D.E. 3]. The Motion to Dismiss alleges, *inter alia*, that the Petitioners are each holders of subordinated, unsecured promissory notes, and as such, the Stop Payment Notice subjects the Petitioners' claims to a *bona fide* dispute as to liability and disqualifies them as petitioning creditors under the Bankruptcy Code.

At a hearing before the Court on May 19, 2009, to consider Flamingo's Emergency Motion for Authority to File Additional Submissions in Support of Motion to Dismiss and Extend the Deadline to Submit its Memorandum [D.E. 44], the Court confirmed that it would treat the Motion to Dismiss as a motion for summary judgment and would set the matter for trial if it determined summary judgment was not appropriate. Counsel for Flamingo and the Petitioners were also directed to submit memoranda of law in support of their respective positions to the Court by May 26, 2009.

After reviewing these memoranda [D.E. 57 and D.E. 58], the Court issued the Order Requesting Submissions on June 4, 2009 (the "Order") [D.E. 70]. The Order requested additional memoranda of law that focused narrowly on the issue of whether "a dispute as to the existence of a subordination agreement constitutes a dispute as to the liability of amount of a claim under 11 U.S.C. § 303(b)." Counsel for Flamingo and the Petitioners filed their additional memoranda on June 9, 2009 [D.E. 74 and D.E. 75].

## Conclusions of Law

Federal Rule of Civil Procedure 56(c), incorporated by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted if the pleadings and depositions, together with any affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is deemed "material"

if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Section 303 of the Bankruptcy Code governs involuntary petitions. Section 303(b) states in relevant part:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title -
> (1) by three or more entities, each of which is either a holder of a claim of such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount... if such noncontingent, undisputed claims aggregate at least $13, 475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[.]

In addition, § 303(h) states that when a petition has been timely controverted, the court shall order relief if "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a *bona fide* dispute as to liability or amount."

Read together, these provisions establish a five part test for a contested involuntary petition: (1) the petitioning claimholders' claims are not contingent as to liability, (2) the claims are not subject to a bona fide dispute as to liability or amount,[2] (3) the value of such claims total in the aggregate at least $13,475; (4) three or more entities commenced the involuntary petition; and (5) the alleged debtor is generally not paying its debts as they come due. *See In re Euro-American Lodging Corp.*, 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007).

Nothing in the record indicates that items 1, 3, 4, or 5 of this test are disputed in this matter. The narrow issue before the Court is whether there is a *bona fide* dispute as to the liability or amount of the Petitioners' claims.

Flamingo alleges that because the Petitioners' "right to payment is subordinate to any

---

[2]The Bankruptcy Abuse Prevention and Consumer Protection Act, Pub.L. No. 109-8, §§ 1234(a)(1)(A) and (a)(12), 119 Stat. 23 (April 20, 2005) ("BAPCPA") amended sections 303(b)(1) and 303(h)(1) of the Bankruptcy Code to add the words "as to liability or amount" following the phrase "*bona fide* dispute."

senior lender whose debt is in default, the liability is the subject of a *bona fide* dispute" [D.E. 74, p. 3]. The Court disagrees. The plain meaning of legislation should be conclusive, "except in those rare cases where the literal application of the statute would produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989). The Court understands "liability" to mean "[a] financial or pecuniary obligation." *Black's Law Dictionary* (8th ed. 2004). Whether or not the Petitioners' notes are subordinated, they represent financial obligations of Flamingo. Accordingly, Flamingo's contention that the Petitioners' notes are subordinated does not create a *bona fide* dispute as to the liability of the notes.

Flamingo also cites *In re IMI Acquisition of Boca Raton Corp.*, an involuntary bankruptcy case with facts similar to the ones at hand, in support of the Motion to Dismiss. 221 B.R. 35, 37 (Bankr. S.D. Fla. 1998). The alleged debtors in *IMI* responded to an involuntary petition by asserting that, pursuant to a loan agreement with their institutional lender, notes held by the petitioning creditors were subordinated and could not be paid. 221 B.R. at 37. The *IMI* court ruled that this defense constituted a *bona fide* dispute under § 303 and dismissed the case. 221 B.R. at 38.

The Court notes that *IMI* was decided in 1998, almost a decade before BAPCPA amended sections 303(b)(1) and 303(h)(1) of the Bankruptcy Code to add the words "as to liability or amount" following the phrase "*bona fide* dispute." The *IMI* court ruled for the alleged debtors simply because they raised a meritorious contention as to the application of law to undisputed facts. 221 B.R. at 37. In contrast, the issue in the present case is not whether the Petitioners' claims are simply subject to a *bona fide* dispute, but whether the claims are subject to a *bona fide* dispute as to their liability or amount.

No party in interest has disputed that the notes held by the Petitioners are valid

obligations of Flamingo, or the dollar amount that is owed on the notes. There is therefore no bona fide dispute as to the liability or amount of the Petitioners' claims under 11 U.S.C. § 303 and it is

**ORDERED** that the Motion to Dismiss Involuntary Petition [D.E. 3 and D.E. 7] is **DENIED**.

###

The Clerk shall provide copies to:

Paul Steven Singerman, Esq.

*Attorney Singerman is directed to serve a conformed copy of this order upon all interested parties and to file a certificate of service in ordderance therewith.*